**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for Plaintiff Shui Shing Yung*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHUI SHING YUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EOS ENERGY ENTERPRISES, INC., JOE MASTRANGELO, and NATHAN KROEKER,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shui Shing Yung ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Eos Energy Enterprises, Inc. ("Eos Energy" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Eos Energy; and (c) review of other publicly available information concerning Eos Energy.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that purchased or otherwise acquired Eos Energy securities between November 5, 2025 and February 26, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Eos Energy designs, manufactures, and markets zinc-based battery energy storage systems intended for utility-scale commercial and industrial

applications.  Throughout fiscal year 2025, the Company touted its allegedly highly efficient manufacturing systems, driven by a transition to a fully-automated battery manufacturing line. The Company further touted the significant revenue and margin benefits allegedly derived from its highly automated manufacturing process, including guidance of $150 to $160 million for full fiscal year 2025 revenue.

3.     On February 26, 2026, before the market opened, Eos Energy announced fourth quarter and full year 2025 results, reporting, among other things, full year 2025 revenue of $114.2 million, falling far short of the Company's previously issued guidance of $150 million to $160 million for fiscal year 2025 revenue. The Company further reported a "gross loss of $143.8 million," a "net loss attributable to shareholders of $969.6 million," and an "adjusted EBITDA loss of $219.1 million." The Company acknowledged, "full year's revenue was below expectations," and further disclosed its "capacity milestone was reached 5 weeks later than initially planned."

4.     In the Company's earnings calls held in conjunction with fourth quarter and full year 2025 results on the same date, the Company's Chief Operating Officer, John Mahaz, disclosed that certain "issues prevented us from delivering our commitments," including that "battery line downtime ran well above industry norms, the design intent of the line and our internal forecast," and "the ability for the

automated bipolar production to hit quality targets took longer than expected. That drove rework and lost revenue."

5.    On this news, Eos Energy's stock price fell $4.39, or 39.4%, to close at $6.74 per share on February 26, 2026 on unusually heavy trading volume.

6.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company was unable to achieve the ramp in production and capacity utilization required to achieve its previously set guidance; (2) the Company's battery line downtime was running well above industry norms, the design intent of the line, and internal forecasts; (3) the Company was experiencing delays in the ability for its automated bipolar production to hit quality targets; (4) the Company's inadequate systems and processes prevented it from ensuring reasonably accurate guidance and that its public disclosures were timely, accurate, and complete; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Shui Shing Yung, as set forth in the accompanying certification, incorporated by reference herein, purchased Eos Energy securities

4

during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant Eos Energy is incorporated under the laws of Delaware with its principal executive offices located in Edison, New Jersey. Eos Energy's common stock trades on the NASDAQ under the symbol "EOSE."

14.    Defendant Joe Mastrangelo ("Mastrangelo") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15.    Defendant Nathan Kroeker ("Kroeker") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.    Defendants Mastrangelo and Kroeker (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been

disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## Background

17.    Eos Energy designs, manufactures, and markets zinc-based battery energy storage systems intended for utility-scale commercial and industrial applications.

## Materially False and Misleading

## Statements Issued During the Class Period

18.    The Class Period begins on November 5, 2025.[1]  On that day, Eos Energy issued a press release announcing its financial results for the quarter ended September 30, 2025. The press release touted the Company's financial and operational results as well as its 2025 fiscal year outlook, as follows in relevant part:

**Third Quarter Highlights**

- ***Record quarterly revenue of $30.5 million, a 100% increase compared to the prior quarter and up 35x from the same period last year, as production efficiencies continue to improve.***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

- ***Gross loss of $33.9 million compared to $31.0 million in the prior quarter, a 92-point margin improvement, driven by increased production volumes and improved project margins.***

- Operating expenses totaled $27.3 million, $5.6 million lower than prior quarter.

- Net loss attributable to shareholders totaled $641.4 million, driven primarily by a $572.3 million cumulative non-cash impact from the changes in fair value tied to mark-to-market adjustments driven by 122% increase in the Company's stock price as of September 30, 2025, and the corresponding loss recorded for the early retirement of convertible notes with a 26.5% interest rate.

- Adjusted EBITDA loss of $52.7 million compared to $51.6 million in the prior quarter, a 166-point improvement on improved manufacturing variable cost utilization.

- Total cash of $126.8 million, including restricted cash, as of September 30, 2025.

- Commercial opportunity pipeline of $22.6 billion, an increase of 21% compared to prior quarter and 59% compared to September 30, 2024, with $644.4 million of orders in backlog as of September 30, 2025.

*       *       *

**2025 Outlook**

***The Company expects full year revenue in the range of $150 million to $160 million,*** consistent with the low end of its previously forecasted range. In recent months, Eos has advanced the implementation of subassembly automation at its Turtle Creek manufacturing facility, with all equipment now on site and 88% of its bipolar lines in commercial production. ***This automation, combined with increasing throughput on the Company's first state-of-the-art manufacturing line, positions Eos to ramp production to an annualized rate of two GWh per year by year-end 2025 and more than triple its output in the fourth quarter.***

19.    On November 5, 2025, the Company published an investor presentation in connection with reporting fiscal third quarter 2025 results. The investor presentation reiterated the Company's confidence in its full year 2025 guidance and further touted the Company's purported operational efficiencies as follows, in relevant part:



*                    *                    *



*          *          *



20.    On November 17, 2025, the Company submitted its quarterly report for

the period ended September 30, 2025 on a Form 10-Q filed with the SEC, affirming

the previously reported financial results. The report further stated the following regarding the Company's purported progress with its "fully-automated battery manufacturing line" as follows, in relevant part:

> ***The transition to the Eos Z3 is progressing as planned, with the first fully automated battery manufacturing line now installed and in commercial production.*** The Z3 uses the same chemistry, known for its ability to endure over 3 million cycles, but introduces a new mechanical design aimed at improving performance, reducing costs, and enhancing manufacturability. The Company began delivering Z3 battery modules in the third quarter of 2023. The Z3 incorporates valuable lessons learned from the past fifteen years, which the Company expects will drive efficiencies as it scales its state-of-the-art manufacturing capabilities.

*                    *                    *

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2025 | 2024 | 2025 | 2024 |
| Revenue | $ 30,512 | $ 854 | $ 56,205 | $ 8,353 |
| Cost of goods sold | 64,437 | 25,764 | 145,622 | 68,114 |
| **Gross profit (loss)** | (33,925) | (24,910) | (89,417) | (59,761) |
| **Operating expenses** | | | | |
| Research and development expenses | 6,925 | 7,428 | 20,963 | 16,878 |
| Selling, general and administrative expenses | 19,786 | 17,796 | 66,269 | 43,331 |
| Loss from write-down of property, plant and equipment | 585 | 3,192 | 1,351 | 3,528 |
| **Total operating expenses** | 27,296 | 28,416 | 88,583 | 63,737 |
| **Operating Loss** | (61,221) | (53,326) | (178,000) | (123,498) |
| **Other (expense) income** | | | | |
| Interest expense, net | (4,846) | (133) | (7,139) | (7,915) |
| Interest income (expense) - related party | 840 | (5,291) | (9,451) | (15,054) |
| Change in fair value of debt - related party | (3,570) | (3,036) | 22,112 | (3,276) |
| Change in fair value of warrants | (240,825) | (66,469) | (252,836) | (71,510) |
| Change in fair value of derivatives - related parties | (327,841) | (213,034) | (369,710) | (260,227) |
| (Loss) gain on debt extinguishment | (3,589) | — | (52,652) | 68,478 |
| Other expense | (337) | (1,593) | (1,503) | (4,727) |
| **Loss before income taxes** | $ (641,389) | $ (342,882) | $ (849,179) | $ (417,729) |
| Income tax expense (benefit) | 4 | (16) | 15 | 17 |
| **Net Loss attributable to shareholders** | $ (641,393) | $ (342,866) | $ (849,194) | $ (417,746) |
| Remeasurement of Preferred Stock - related party | (691,094) | (41,267) | (632,483) | (64,938) |
| Down round deemed dividend | — | — | (4,456) | — |
| **Net Loss attributable to common shareholders** | $ (1,332,487) | $ (384,133) | $ (1,486,133) | $ (482,684) |
| **Other Comprehensive Loss** | | | | |
| Change in fair value of debt - credit risk - related party | $ (17,784) | $ (4,642) | $ (24,008) | $ (4,642) |
| Foreign currency translation adjustment | (3) | 3 | 18 | (1) |
| **Comprehensive Loss attributable to common shareholders** | $ (1,350,274) | $ (388,772) | $ (1,510,123) | $ (487,327) |
| | | | | |
| **Basic and diluted Loss per share attributable to common shareholders** | | | | |
| Basic | $ (4.91) | $ (1.77) | $ (6.06) | $ (2.30) |
| Diluted | $ (4.91) | $ (1.77) | $ (6.06) | $ (2.30) |
| | | | | |
| **Weighted average shares of common stock** | | | | |
| Basic | 271,618,045 | 216,898,374 | 245,090,793 | 209,820,480 |
| Diluted | 271,618,045 | 216,898,374 | 245,090,793 | 209,820,480 |

21.    The above statements identified in ¶¶ 18-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the Company was unable to achieve the ramp in production and capacity utilization required to achieve its previously set guidance; (2) the Company's battery line downtime was running well above industry norms, the design intent of the line, and internal forecasts; (3) the Company was experiencing delays in the ability for its automated bipolar production to hit quality targets; (4)

the Company's inadequate systems and processes prevented it from ensuring reasonably accurate guidance and that its public disclosures were timely, accurate, and complete; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

22.    On February 26, 2026, before the market opened, Eos Energy announced fourth quarter and full year 2025 results, reporting, among other things, full year 2025 revenue of $114.2 million, falling far short of the Company's previously issued guidance of $150 million to $160 million for fiscal year 2025 revenue. The Company further reported a "gross loss of $143.8 million," a "net loss attributable to shareholders of $969.6 million," and an "adjusted EBITDA loss of $219.1 million." The Company acknowledged "full year's revenue was below expectations," and further disclosed its "capacity milestone was reached 5 weeks later than initially planned." Specifically the press release stated as follows, in relevant part:

**Full Year 2025 Highlights**

- ***Revenue of $114.2 million, more than 7x 2024, driven by scaled production of the company's first generation highly automated manufacturing process and a 609% increase in customer deliveries.***

- Gross loss of $143.8 million, improving margins by 408 points, as manufacturing volumes increased and Z3 production costs declined. Adjusted gross loss was $128.5 million.

- Net loss attributable to shareholders of $969.6 million, driven primarily by $746.8 million or 77% non-cash items related to fair value accounting, capital structure optimization, and other items such as stock-based compensation and depreciation.

- Adjusted EBITDA loss of $219.1 million, compared to $156.6 million in 2024, an 812-point margin improvement, driven by ongoing operational efficiencies, leverage, and cost reductions.

*        *        *

**Recent Business Highlights**

Record Operational Performance

Eos exited 2025 with 2 GWh of annualized production capacity achieved through continued automation, subassembly integration, and manufacturing process optimization. Although the ***capacity milestone was reached 5 weeks later than initially planned,*** the Company accelerated operational execution throughout the second half of the year, achieving production records across all operations. While ***full year's revenue was below expectations,*** execution accelerated significantly with record fourth quarter revenue and year-over-year shipments increasing 659%.

23.　　In the Company's earnings calls held in conjunction with fourth quarter and full year 2025 results on the same date, the Company's Chief Operating Officer, John Mahaz, disclosed that certain "issues prevented us from delivering our commitments," including that "battery line downtime ran well above industry norms, the design intent of the line and our internal forecast," and "the ability for the automated bipolar production to hit quality targets took longer than expected. That

13

drove rework and lost revenue." Specifically, during the earnings call Chief

Operating Officer John Mahaz stated as follows, in relevant part:

> ***Ultimately, 3 very fixable issues prevented us from delivering our commitments.*** First, we had one isolated supplier nonperformance that cost us a week of production. We addressed it directly, working closely with our supplier to quickly identify root causes and corrective actions. We implemented better controls internally and at our suppliers. That specific issue is behind us. Second, ***the ability for the automated bipolar production to hit quality targets took longer than expected. That drove rework and lost revenue.*** We improved tooling, reduced variation in the automation process and tightened material specifications to stabilize bipolar production. We have also added laser detection to give us better visibility and control of any process variation.

> ***Third, our battery line downtime ran well above industry norms, the design intent of the line and our internal forecast.*** Best-in-class operations and ***our expectation is to run at roughly 10% equipment downtime***. That's my expectation, and that's the expectation of our automation partners. As we push utilization higher throughout the year and ran the line for more hours, ***we were closer to the mid-30% range.*** Working closely with our automation partners, we addressed issues with our robotics, hardware, controls, maintenance schedules and spare parts. We have also improved our technical capability and strengthened our team to improve time to resolution.

24.    On this news, Eos Energy's stock price fell $4.39, or 39.4%, to close at

$6.74 per share on February 26, 2026 on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and

entities that purchased or otherwise acquired Eos Energy securities between

November 5, 2025 and February 26, 2026, inclusive, and who were damaged thereby

14

(the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Eos Energy's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Eos Energy shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Eos Energy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Eos Energy; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.    The market for Eos Energy's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Eos Energy's securities traded at artificially

inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Eos Energy's securities relying upon the integrity of the market price of the Company's securities and market information relating to Eos Energy, and have been damaged thereby.

32.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Eos Energy's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Eos Energy's business, operations, and prospects as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eos Energy's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant

times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35.    During the Class Period, Plaintiff and the Class purchased Eos Energy's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

36.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants,

by virtue of their receipt of information reflecting the true facts regarding Eos Energy, their control over, and/or receipt and/or modification of Eos Energy's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Eos Energy, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

37.     The market for Eos Energy's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Eos Energy's securities traded at artificially inflated prices during the Class Period.  On November 10, 2025 the Company's share price closed at a Class Period high of $19.19 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Eos Energy's securities and market information relating to Eos Energy, and have been damaged thereby.

38.     During the Class Period, the artificial inflation of Eos Energy's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eos Energy's

business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Eos Energy and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.    At all relevant times, the market for Eos Energy's securities was an efficient market for the following reasons, among others:

(a)    Eos Energy shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Eos Energy filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Eos Energy regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Eos Energy was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Eos Energy's securities promptly digested current information regarding Eos Energy from all publicly available sources and reflected such information in Eos Energy's share price. Under these circumstances, all purchasers of Eos Energy's securities during the Class Period suffered similar injury through their purchase of Eos Energy's securities at artificially inflated prices and a presumption of reliance applies.

41.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.    All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in

21

making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Eos Energy who knew that the statement was false when made.

**FIRST COUNT**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

43.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Eos Energy's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Eos Energy's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Eos Energy's financial well-being and prospects, as specified herein.

47.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eos Energy's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Eos Energy and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of

these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Eos Energy's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or

omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Eos Energy's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Eos Energy's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Eos Energy was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Eos Energy securities, or, if they had acquired

such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND COUNT

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.     Individual Defendants acted as controlling persons of Eos Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which

Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.    As set forth above, Eos Energy and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**

Dated:  March 6, 2026          */s/ James E. Cecchi*
                               James E. Cecchi
                               Donald A. Ecklund
                               Kevin G. Cooper
                               5 Becker Farm Road
                               Roseland, New Jersey 07068
                               Telephone: (973) 994-1700
                               Email: jcecchi@carellabyrne.com
                               decklund@carellabyrne.com
                               kcooper@carellabyrne.com

                               *Liaison Counsel for Plaintiff Shui Shing Yung*

                               **GLANCY PRONGAY WOLKE & ROTTER LLP**
                               Robert V. Prongay
                               Charles H. Linehan
                               1925 Century Park East, Suite 2100
                               Los Angeles, CA 90067
                               Telephone: (310) 201-9150
                               Facsimile: (310) 201-9160
                               Email:  clinehan@glancylaw.com

                               Rebecca Dawson
                               230 Park Ave, Suite 358
                               New York, New York 10169
                               Telephone: (213) 521-8007
                               Facsimile: (212) 884-0988
                               Email:  rdawson@glancylaw.com

                               **HOLZER & HOLZER, LLC**
                               Corey D. Holzer
                               211 Perimeter Center Parkway, Suite 1010
                               Atlanta, GA 30346
                               Telephone: (770) 392-0090
                               Email: cholzer@holzerlaw.com

                               *Counsel for Plaintiff Shui Shing Yung*